**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON**

**CIVIL ACTION NO. 07-272-DLB**

**CHRISTINA HALCOMB**                                                                      **PLAINTIFF**

vs.                                    **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security**                                                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Christina Halcomb filed applications for disability insurance benefits (DIB) and social security income (SSI) payments on November 18, 2004 (date of protective filing). (Tr. 49-54, 331-37). Plaintiff was 30 years old on the alleged disability onset date of April 20, 2004. (Tr. 17, 49, 332). She alleges disability due to carpal tunnel syndrome, degenerative disc disease, status post discectomy at the L4 and L5 levels of the lumbar spine, diabetes, headaches, depression, and anxiety. (Doc. #10-2 at 2; Tr. 36). Her applications were denied initially and on reconsideration. (Tr. 34-35). At Plaintiff's request, an administrative hearing was conducted on September 22, 2006, by Administrative Law Judge (ALJ) Frank Letchworth. (Tr. 443-93). On October 26, 2006, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI payments. (Tr. 17-26).

This decision became the final decision of the Commissioner when the Appeals Council denied review on June 6, 2007. (Tr. 6-9).

On August 6, 2007, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for adjudication (Doc. #10, 11).

## II.   DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof

shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that claimant has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 19).  At Step 2, the ALJ found Plaintiff's residuals of back surgery and diabetes mellitus to be severe impairments within the meaning of the regulations. (Tr. 19-21).  At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 21).  At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform:

> light work activity lifting up to 20 pounds occasionally and 10 pounds frequently; she can sit or stand or walk up to 6 hours for each activity in an 8 hour day with a sit/stand option every 30 minutes; she is precluded from any crawling, or climbing ladders, ropes, and scaffolds; she can perform no more than occasional climbing of ramps and stairs, bending, or stooping; she can perform frequent handling and fingering, but must avoid concentrated exposure to vibration.

(Tr. 21). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a babysitter, cashier, cashier/cook, sewing machine operator, and telemarketer. (Tr. 24).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in the national and regional economies, despite her limitations. (Tr. 25).  This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (30 years of age on the alleged disability onset

date and so "a younger individual"), education (high school), work experience, and RFC. (Tr. 24-25). The VE testified that Plaintiff could work as a parking lot attendant or a cashier. (Tr. 25, 490).[1] Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 25-26).

**C.  Analysis**

Plaintiff raises a number of challenges in her appeal. Generally, Plaintiff alleges that the ALJ improperly discredited a number of medical opinions, leading to the improper formulation of Plaintiff's RFC. The Court will address these challenges in turn.

**1.  Opinion of Dr. Muffly**

Plaintiff claims the ALJ failed to provide adequate rationale for his rejection of Dr. David E. Muffly's opinion. (Doc. #10-2 at 11). Based on his examination of Plaintiff,[2] Dr. Muffly found:

> Restrictions are of less than 20 pounds of maximum lifting. Needs a position change every 1 hour, maximum sitting or standing 3 hours in a 8 hour day. Can not do repeated wrist movement or fine manipulation with her wrists and hands. Should only do minimal bending and stooping.

(Tr. 183). Addressing Dr. Muffly's opinion, the ALJ provided:

> As for the opinion evidence, I have considered Dr. Muffly's opinion, particularly his assessment of the claimant's maximum sitting ability (3 hours of 8) and find this not consistent with her admitted full time school attendance and other activities of daily living. I also note the claimant returned to work

---

[1] While the ALJ determined that Plaintiff could not return to her past work as a cashier or a cashier/cook, the VE's testimony reveals that the cashier positions that Plaintiff can perform represent a reduced number of cashier positions, which reflect Plaintiff's limitations. (Tr. 490).

[2] At her hearing, Plaintiff acknowledged that Dr. Muffly did not have Plaintiff undergo an actual functional capacity evaluation. (Tr. 458-59).

4

> after Dr. Muffly rendered his opinion and stopped mostly because of problems with increased twisting, though she makes no mention of problems with twisting elsewhere in the record. In addition, the claimant underwent no long term or aggressive postoperative treatment such as physical therapy, injections, or prescribed narcotic pain medications, which undermine her allegations of severe, chronic, disabling back or leg pain. She rejected surgical repair of her hand condition, has required minimal treatment for hand pain, and continues with significant school work and driving. Thus, I find the claimant's allegations are not supported by the evidence of record.

(Tr. 23). Plaintiff contends that this is an insufficient basis to reject Dr. Muffly's opinion. The Court disagrees.

Plaintiff argues the ALJ should have assigned greater weight to Dr. Muffly's opinion given his expertise as an orthopedic surgeon. (Doc. #10-2 at 12). However, Plaintiff visited Dr. Muffly for a one-time orthopedic evaluation. (Tr. 180-83). As Defendant notes, it is well settled that the opinions of a physician who only examined a claimant one time are not entitled to the same weight the opinion might have been given had the opinion been issued by a physician who had treated the claimant over a period of time. *See* 20 C.F.R. § 404.1527(d)(2); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983).[3]

Moreover, it is equally well settled that an ALJ may properly discount medical opinions not supported by evidence or not consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(3),(4). The ALJ explicitly referenced Dr. Muffly's evaluation in great detail and identified inconsistencies between Dr. Muffly's report and the evidence of record. (Tr. 22-23). For instance, the ALJ noted that Dr. Muffly's assessment of Plaintiff's

---

[3] It is worth noting that the ALJ did not entirely reject Dr. Muffly's opinion. Rather, the ALJ gave Dr. Muffly's opinion some weight in determining that Plaintiff could lift no more than 20 pounds. (Tr. 21).

5

maximum ability to stand (a maximum of 3 hours out of 8) was "not consistent with her admitted full time school attendance and other activities of daily living." (Tr. 23). The ALJ also noted that Defendant performs clinical work three hours per day, two days per week, assisting a therapist with activities for adolescents at "Comp Care." (Tr. 23, 452-53).[4] Based on Plaintiff's report to Dr. Barbara L. Belew that her summers are filled with taking her children to "many/varied activities," the ALJ determined that "the claimant is more involved with her children's activities and capable of greater activity generally, than she is willing to admit." (Tr. 24). These daily activities are inconsistent with the standing/sitting limitations assessed by Dr. Muffly and support the ALJ's determination that claimant is not disabled.

Plaintiff also contends that the ALJ "offered no basis for disregarding" Dr. Muffly's opinion regarding claimant's allegations of carpal tunnel syndrome. (Doc. #10-2 at 13). However, in the very next sentence of Plaintiff's motion, Plaintiff actually points out the ALJ's stated rationale for disregarding the opinion of Dr. Muffly regarding carpal tunnel syndrome. (*Id.*). Specifically, the ALJ noted that Plaintiff "rejected surgical repair of her hand condition, has required minimal treatment for hand pain, and continues with significant school work and driving." (Tr. 23). While Plaintiff may disagree with the ALJ's analysis, it is disingenuous to argue that the ALJ provided "no basis" for his decision to reject Plaintiff's allegations of carpal tunnel syndrome.

### 2. Opinion of Dr. Nutter

---

[4] Defendant counters that the ALJ's references to Plaintiff's activities of daily living and her status as a full time student do not take into consideration the accommodations made on behalf of Plaintiff that have allowed her to engage in these activities. (Doc. #10-2 at 11). Contrary to this argument, the ALJ explicitly referenced these accommodations in his opinion. (Tr. 22).

Plaintiff also argues that the ALJ failed to provide sufficient rationale for his rejection of Dr. Stephen Nutter's opinion.[5] Plaintiff claims that the RFC assigned to claimant is not reflective of Dr. Nutter's report. (Doc. #10-2 at 12). Moreover, Plaintiff contends that the ALJ's opinion is internally inconsistent. (*Id.*). As evidence of this alleged inconsistency, Plaintiff notes that, while the ALJ determined that Dr. Nutter's opinion is entitled to "great weight," he rejected Dr. Nutter's assessment that Plaintiff is limited to four hours sitting, walking, and standing in an eight-hour day. (*Id*).

As Plaintiff points out, the ALJ did not explicitly address the restrictions assessed by Dr. Nutter concerning Plaintiff's sitting, walking, and standing. (Doc. #10-2 at 12). However, the ALJ referenced a number of Dr. Nutter's findings and discussed Plaintiff's activities of daily living, which undermine Dr. Nutter's findings. (Tr. 23). Moreover, an ALJ is not required to assume conditions or limitations when the ALJ does not find them to be credible or supported by the evidence. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). While the ALJ did not specifically address every single piece of evidence in the record, he did sufficiently consider the evidence of record as a whole. The Sixth Circuit has provided that:

> An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999 (internal

---

[5] Plaintiff also alleges that the ALJ failed to adequately consider Dr. James Bean's opinion in formulating Plaintiff's RFC. (Doc. 10-2 at 11-12). However, Plaintiff does not explain how Dr. Bean's report would have impacted the RFC. Upon review of the record, the Court is satisfied that the ALJ properly considered Dr. Bean's opinion. (Tr. 23-24).

citations and quotations omitted)).

As to alleged internal inconsistencies, the Court finds that the ALJ's adoption of portions of Dr. Nutter's opinion was consistent with his analysis of the evidence of record. Importantly, the ALJ never stated that he was adopting Dr. Nutter's opinion in its entirety. Rather, the ALJ stated that he assigned "great weight to Dr. Bean's and Dr. Nutter's assessment, which are fairly consistent with Dr. Muffly's findings except as noted above and are also consistent with the state agency assessment of light work." (Tr. 24). While this language is somewhat confusing, the Court finds that the ALJ assigned "great weight" to the opinions of Dr. Bean and Dr. Nutter to the extent that they supported the ALJ's ultimate determination that Plaintiff could perform light work. Moreover, this single sentence in the ALJ's decision does not detract from what is a well-reasoned opinion.

Plaintiff further contends that the ALJ failed to provide an adequate basis for rejecting Dr. Nutter's assessment of impairments associated with carpal tunnel syndrome. As was discussed in the previous section, the ALJ set forth sufficient grounds for rejecting Plaintiff's allegations of carpal tunnel syndrome. Specifically, the ALJ noted that Plaintiff "rejected surgical repair of her hand condition, has required minimal treatment for hand pain, and continues with significant school work and driving." (Tr. 23). Thus, Dr. Nutter's opinion concerning carpal tunnel syndrome was not consistent with the evidence of record in terms of Plaintiff's medical history or her activities of daily living.

### 3. Opinion of Dr. Belew

Finally, Plaintiff argues that the ALJ failed to provide a sufficient rationale for rejecting the opinion of Barbara L. Belew, Ph.D. (Doc. #10-2 at 13-14). Contrary to Plaintiff's position, however, the Court finds that the ALJ provided a more than adequate

basis for determining that Dr. Belew's opinion "merits little weight." (Tr. 20-21). First, the ALJ noted that Dr. Belew's examination was obtained at the request of Plaintiff's attorney "for the purpose of furthering her disability claim." (*Id.*). The ALJ determined that Dr. Belew's opinion was internally inconsistent, noting that Dr. Belew acknowledged Plaintiff's status as full time student but assigned her a Global Assessment of Functioning (GAF) score of 45. (Tr. 21, 298). A GAF score of 45 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). Thus, the GAF score assigned to Plaintiff is wholly inconsistent with Plaintiff's status as a full time Dean's List student with a 3.3 grade point average. (Tr. 20-21, 451). The ALJ further noted that Plaintiff intends to begin a master's program upon graduation. (Tr. 20). As the ALJ observed, a GAF score of 45 is also inconsistent with Plaintiff's activities of daily living, which have been discussed in previous sections. (Tr. 21). The ALJ noted that "[t]he claimant has not had any psychological counseling or hospitalization nor has she been referred for any by her treating professionals." (Tr. 20). The ALJ commented that "the evidence shows the claimant has coped quite well with her psychological issues." (Tr. 21). An ALJ may properly discount opinions not supported by evidence or not consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(3),(4). Certainly, in this case, the ALJ identified a number of instances in which Plaintiff's allegations of mental impairment were inconsistent with the evidence of record.

### III.   CONCLUSION

The record contains ample evidence supporting the ALJ's finding that Plaintiff is not disabled. While the record contains conflicting opinions as to Plaintiff's functional ability,

the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  Put simply, the ALJ's opinion is supported by substantial evidence.  Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Commissioner's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED**.

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 20th day of August, 2008.

G:\DATA\SocialSecurity\MOOs\6-07-272-HalcombMOO.wpd



Signed By:
*David L. Bunning*
United States District Judge

10